UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

OSWALD URBAN NELSON,               )
                                   )
        Plaintiff,                 )
                                   )
v.                                 )    Case 3:12-0795
                                   )
LOIS DeBERRY SPECIAL NEEDS         )    Judge Sharp / Brown
FACILITY et al.,                   )
                                   )
        Defendants.                )


REPORT AND RECOMMENDATION

TO: The Honorable Kevin H. Sharp

        *Pro se* plaintiff Oswald Urban Nelson has paid in full the
filing fee in this case. By order entered August 14, 2013 (ECF
No. 28), the matter was referred to the undersigned to conduct
an initial review of the complaint pursuant to the Prison
Litigation Reform Act ("PLRA"), 28 U.S.C. § 1915A and 42 U.S.C.
§ 1997e(c). For the reasons set forth below, the Magistrate
Judge finds that the complaint fails to state a colorable claim
against twelve of the fifteen defendants, and therefore
recommends that the claims against those twelve defendants be
dismissed pursuant to the PLRA for failure to state a claim for
which relief can be granted under 42 U.S.C. § 1983. With respect
to the three defendants against whom the complaint states a
colorable claim, the Magistrate Judge finds that the complaint

does not state an official-capacity claim against those defendants, and recommends that the official-capacity claims against those defendants be dismissed, while the individual-capacity claims are permitted to proceed.

## I.    Standard of Review

Under the PLRA, the district court is required to dismiss any prisoner action against a government entity or official, or challenging the prisoner's conditions of confinement, if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. § 1915A; 42 U.S.C. § 1997e(c). In conducting the initial review of the complaint, the court must read the plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept the plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).

The Sixth Circuit has confirmed that the dismissal standard articulated by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), "governs dismissals for failure to state a claim under [the PLRA] because the relevant statutory language tracks the language in Rule 12(b)(6)." *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). Thus, to survive scrutiny on initial review, "a

complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing Twombly, 550 U.S. at 556).

## II. Factual Allegations

At the time this action was filed, in July 2012, the plaintiff was confined at the Lois M. DeBerry Special Needs Facility ("DSNF") in Nashville, Tennessee. He is now at the West Tennessee State Prison in Henning, Tennessee.

Although the exact nature and timeline of the events about which the plaintiff complains are not entirely clear, it appears based on a grievance attached as an exhibit to the complaint that the plaintiff was participating in an "R-DAP" (drug and alcohol rehabilitation) program at the Hardeman County Correctional Center in Whiteville, Tennessee but was sent to the mental-health program at Charles Bass Correctional Complex ("CBCX") because he was becoming paranoid and suffering from other symptoms of mental illness. At some point, the plaintiff was transferred to the DSNF but was no longer assigned to a "mental health unit." While there, the plaintiff allegedly reported to authorities that his cellmates were smoking crack

cocaine and cigarettes in their cell. Thereafter, the plaintiff received two notes from other inmates saying they were going to kill him, so the plaintiff was placed in "P.C." (presumably protective custody or confinement).

The plaintiff claims he was held in segregation or protective custody for two months, allegedly for his own safety (because of the plaintiff's having reported his cellmates for drug use), at the direction of defendant Bob Erwin.

When the plaintiff was released from "confinement" after two months, he was placed back in the same unit – Unit 4 – where his former cellmates were housed and where he was supposedly in danger. Almost immediately, he got in a fight with another unidentified inmate, apparently not one of his former cellmates, and was placed back in confinement as punishment for fighting. The plaintiff maintains that he should never have been placed back in Unit 4, where he had had such conflicts, and that in any event, he should be in a mental health unit.

In his original complaint, the plaintiff named as defendants the Lois M. DeBerry Special Needs Facility itself, and five individuals employed at DSNF: Bob Erwin, a classification specialist; Dr. Bambee (first name unknown ("F/N/U"); Dr. O'Toul (F/N/U), Mental Health Doctor; Mr. Lanier (F/N/U), Unit 4 counselor; and Mr. Ganaway (F/N/U), Unit 7 counselor. (ECF No. 1, at 5-6.) In an amended complaint filed in

September 2012, the plaintiff added nine new defendants, including: [former] DSNF Warden Jewel Steele; Deputy Warden Ryan; Corporal Campbell; C.C.O. Maxwell; Officer McCoy; Officer Perez; Dr. Barneard [sic]; Corporal Davis; and Corporal Shaver. (ECF No. 9, at 1-2.) The plaintiff names all defendants in both their individual and official capacities.

The plaintiff alleges that Dr. O'Toul intentionally put his life in danger, because she has known him for many years and knows his "mental history and status," and that she "conspire[ed] with other defendants to put [his] life in danger" after the plaintiff had "confided in her and talked to her about all the wrongful [sic] that had been done to [him] at Deberry and Unit 4." (ECF No. 1, at 7.)

The plaintiff states that Bob Erwin and Dr. Bambee conspired together between April 30, 2012 and June 13, 2012 to keep the plaintiff wrongfully in confinement (segregation) at DSNF, and intentionally put the plaintiff "back in harm's way" by allowing him to be released back into Unit 4. He claims Erwin and Bambee did not consult with Dr. O'Toul about the plaintiff's placement or about his mental illness, but also that they knew about his mental history and did nothing to get the plaintiff the proper placement, and specifically refused the plaintiff's request that he be placed in a mental health unit. (*Id.*)

The plaintiff's claim against DSNF is premised on the fact

that "such things" were "allow[ed] . . . to happen on their pro[p]erty." (*Id.*) The plaintiff also faults DSNF "security staff" for allowing serious altercations between inmates to occur; and he faults DSNF "medical staff" "for not following instructions" from Meharry Hospital's ER upon the plaintiff's discharge for treatment of his "split" and swollen face and swollen hand on June 16, 2012. (*Id.*)

The plaintiff sues Mr. Lanier for intentionally putting the plaintiff's life in danger and "for knowing all the inmates . . . in unit 4 didn't like [the plaintiff] because [he] didn't want them to smoke in the room and because [he] wouldn't give in to their homosexual desires." (ECF No. 1, at 8.) He specifically alleges that Mr. Lanier was aware of the plaintiff's mental health status, and that the plaintiff had spoken to him several times about the plaintiff's concerns about "guys stalking" him, but did nothing. The plaintiff claims Mr. Lanier should have reclassified him after "that entire officer Powell situation."[1] (ECF No. 1, at 8.)

_____

[1] The plaintiff here is referring to an incident that is not the subject of this complaint, but was the subject of another federal action in which the plaintiff alleged that a corrections officer named Powell touched him inappropriately and made sexual advances toward him, and then fabricated disciplinary infractions in retaliation for the plaintiff's refusing to have a sexual relationship with him. The case was dismissed on the defendant's motion for failure to exhaust administrative remedies. Nelson v. Lois DeBerry Special Needs, No. 3:12-cv-0814 (M.D. Tenn. Dec. 20, 2012) (order of dismissal, ECF No. 42).

The claims against Mr. Ganaway are based on the plaintiff's allegations that Mr. Ganaway also conspired with the other defendants to put the plaintiff's life in danger, knowing about his mental health issues and the problems he had had in Unit 4.

The plaintiff states that all the defendants knew he was having problems with his cellmates, whom the plaintiff had reported for smoking crack and cigarettes in their cell and making homosexual advances on the plaintiff, but did not reclassify him or move him to a different unit, and then failed to protect him when he was assaulted twice by another inmate (a "guy who wasn't even suppose [sic] to be on my side" (ECF No. 1, at 17 (6/18/12 grievance)).

In the amended complaint filed in September 2012, the plaintiff states that he had talked to CCA Maxwell about "inmates stalking [him] and trying to suggest homosexual stuff to [him]," and talked to both Maxwell and Lanier about his cellmates smoking crack and cigarettes in the plaintiff's cell, but they disregarded his complaints. (ECF No. 8, at 2-3.) Maxwell, however, told the plaintiff that he was going to be moved to Unit 7, but this never happened. The plaintiff claims Maxwell and Lanier did not help him because he refused to "have a low down relationship" with either of them. (*Id.* at 3.)

The plaintiff claims Officer McCoy "slammed the door in his face wouldn't let [him] eat chow" after he filed a grievance

about her treating him unfairly. (*Id.*) She was also the officer who allegedly watched as the plaintiff was assaulted and allowed the other inmate to find something to hit the plaintiff with, even though the other inmate was supposed to be on a different side of the yard. The plaintiff claims Officer McCoy did not call a "code" when she saw the assault occurring.

Officer Perez was allegedly the other officer working that day and who allowed the assault to continue for 30 minutes without intervening to protect the plaintiff. The plaintiff also claims that Officer Perez was responsible for allowing several inmates to be on the wrong side of the yard with no supervision.

The plaintiff states that Dr. Barneard initially was not going to send the plaintiff to the ER after the assault but then changed his mind. The plaintiff received stitches at the ER and pain medication. He claims that upon his return to the prison, the medical staff, including Dr. Barneard, never provided any follow-up care and did not allow him to have pain medication or even ice packs for his swollen face and hand.

The plaintiff sues Corporal Campbell and Corporal Davis because they are "over the grievance board" and allegedly violated the plaintiff's due-process rights by failing to process his grievances and instead sending them back to him marked "inappropriate."

The plaintiff asserts that Warden Steele knows the

plaintiff's situation and his family and that he talked to her several times while he was in confinement. He thought she would help him get placement in a mental-health unit but instead she "shipped [him] off." (ECF No. 8, at 6.) The plaintiff claims he also talked to Deputy Warden Ryan while he was in confinement, and that Ryan and Steele both "signed off and allowed all of this to happen on their compound." (ECF No. 8, at 7.)

The plaintiff alleges that the defendants all acted with deliberate indifference to the risk of harm to him from other inmates, and he brings claims against them under both federal and state law. He seeks monetary damages from all the defendants.

## III. Discussion

The plaintiff invokes the district court's federal-question jurisdiction by bringing suit under 42 U.S.C. § 1983 to vindicate alleged violations of his federal constitutional rights. Section 1983 confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Burnett v. Grattan*, 468 U.S. 42, 44 n.3 (1984); *Stack v. Killian*, 96 F.3d 159, 161 (6th Cir. 1996). Thus, to state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that "the

deprivation was caused by a person acting under color of state law." *Tahfs v. Proctor*, 316 F. 3d 584, 590 (6th Cir. 2003) (citations omitted); 42 U.S.C. § 1983.

As an initial matter, the Magistrate Judge finds that the DeBerry Special Needs Facility is a building, not a person subject to liability under § 1983. *Cf. Kimbrough v. Lois DeBerry Special Needs Facility*, No. 3:12–cv–782, 2012 WL 3597208, at *2 (M.D. Tenn. Aug. 17, 2012). Dismissal of this defendant is therefore appropriate under the PLRA.

Second, the Magistrate Judge finds that the complaint fails to state a claim against any defendant in his or her official capacity. As the Supreme Court noted in *Kentucky v. Graham*, 473 U.S. 159, 165–66(1985), a claim brought against a government employee in his or her official capacity is the equivalent of a claim brought against the governmental entity itself. The named defendants, all of whom are employed at a state-run prison, are presumably state employees, so the official-capacity suit is equivalent to suit against the state itself. *Johnson v. Unknown Dellatifa*, 357 F.3d 539, 545 (6th Cir. 2004). The plaintiff seeks relief in the form of monetary damages only in this case. Pursuant to the Eleventh Amendment, the state is absolutely immune from liability for damages. The complaint therefore fails to state a claim against any of the defendants in their official capacity. Further, to the extent any of the defendants are not

state employees, the complaint fails to allege the existence of a state- or institution-wide policy or practice that allegedly gave rise to the plaintiff's injuries, and for that reason too fails to state an official-capacity claim against any of the defendants. *City of Canton v. Harris*, 489 U.S. 378, 389 (1989); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).

As for the individual-capacity claims against the natural persons named as defendants, the Magistrate Judge finds for purposes of this review that these individuals acted at all pertinent times under color of state law. The question is whether the allegations in the complaint, accepted as true and construed liberally in the plaintiff's favor, as required at this stage of the proceedings, establish that each defendant was responsible for depriving the plaintiff of his constitutional rights. To establish the liability of any individual defendant, the plaintiff must show that that particular defendant was personally involved in the activities giving rise to the plaintiff's claims. *Rizzo v. Goode*, 423 U.S. 362, 371 (1976). *See also Heyerman v. Cnty. of Calhoun*, 680 F.3d 642, 647 (6th Cir. 2012) (noting that "[p]ersons sued in their individual capacities under § 1983 can be held liable based only on their own unconstitutional behavior"); *Murphy v. Grenier*, 406 F. App'x 972, 974 (6th Cir. 2011) ("Personal involvement is necessary to establish section 1983 liability." (citing *Gibson v. Matthews*,

926 F.2d 532, 535 (6th Cir. 1991).

With respect to Dr. O'Toul, the plaintiff alleges only that this doctor has known him for many years and knows his "mental history and status," and that she "conspire[ed] with other defendants to put [his] life in danger." (ECF No. 1, at 7.) The complaint does not state any actual facts, beyond the plaintiff's own speculation, to indicate why the plaintiff believes that Dr. O'Toul is involved in some conspiracy to endanger him. In one of the plaintiff's grievances, dated June 21, 2012, the plaintiff speculates that Dr. O'Toul was responsible for his care in the past and that she therefore might be "responsible just as much as the other defendants." (ECF No. 1, at 20.) The Magistrate Judge finds that the plaintiff's claims against Dr. O'Toul are based on nothing but speculation, and the factual allegations in the complaint do not establish her personal involvement in any of the actions giving rise to the plaintiff's alleged injuries. The Magistrate Judge therefore finds that the complaint fails to state a claim against Dr. O'Toul.

The plaintiff asserts that Bob Erwin, the classification specialist, conspired with Dr. Bambee to keep the plaintiff in segregation for two months, for no valid reason, and then intentionally put the plaintiff back in "harm's way" by releasing him from confinement back into the unit where he was

allegedly at risk of harm from the inmates he had reported for smoking crack and cigarettes in his cell. He faults these defendants, and Dr. Bambee in particular, for not consulting with Dr. O'Toul about his mental health needs, and for refusing the plaintiff's request to be housed in a mental health unit.

The plaintiff does not indicate which of his constitutional rights this conduct might have violated. With respect to the placement in confinement, the law is clear that continuous administrative segregation for a significant period of time may constitute an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" that may deprive the inmate of a legally cognizable liberty interest. *Sandin v. Conner*, 515 U.S. 472, 484 (1995). *Cf. Harden-Bey v. Rutter*, 524 F.3d 789, 792-93 (6th Cir. 2008) (finding a question of fact as to whether an "indefinite" placement that had already lasted three years implicated a protected liberty interest; *Shoats v. Horn*, 213 F.3d 140, 144 (3rd Cir. 2000) (finding that the plaintiff's confinement for eight years in administrative segregation had imposed a significant hardship on him in relation to the ordinary incidents of prison life of the type that implicated his due-process interests). Short periods of confinement in segregation, however, are deemed not to pose an "atypical and significant hardship" and therefore do not violate any cognizable rights. *See, e.g.*, *Bennett v. Smith*, 110 F. App'x

633, 634 (6th Cir. 2004) (prisoner's placement in administrative segregation for 68 days in response to his request for protective custody did not constitute an atypical and significant hardship, and thus did not give rise to a due process claim under § 1983); *Merchant v. Hawk-Sawyer*, 37 F. App'x 143 (6th Cir. 2002) (16-month stay in administrative detention while disciplinary charges were pending did not violate Eighth Amendment; and a 21-month confinement in special housing unit did not violate Fourteenth Amendment). Accordingly, the Magistrate Judge finds that the plaintiff's two-month detention in protective custody does not implicate the plaintiff's due-process rights, because it did not pose an atypical and significant hardship, and the plaintiff had no liberty interest in being returned to the general prison population.

Nor did the confinement in protective custody implicate the plaintiff's rights under the Eighth Amendment, because the plaintiff does not allege that he was deprived of "the minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). He does not allege that he was denied basic human needs, such as water, food, shelter, medical treatment or personal safety. *See Harden-Bey*, 524 F.3d at 795 ("'Because placement in segregation is a routine discomfort that is a part of the penalty that criminal offenders pay for their

offenses against society, it is insufficient to support an Eighth Amendment Claim.'" (quoting *Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003)); *Merchant*, 37 F. App'x at 145 (the plaintiff failed to state an Eighth Amendment claim where he "presented no evidence that he was denied basic human needs or was otherwise subjected to cruel and unusual punishment by virtue of the conditions in administrative detention or disciplinary segregation").

The plaintiff seems also to be suggesting that defendants Erwin and Bambee failed to protect him from assault by placing him (or approving his placement) back in Unit 4, the same unit where the inmates who supposedly posed a threat to him were still housed. There is no question that prison officials have an affirmative duty under the Eighth Amendment to protect inmates from violence perpetrated by other prisoners. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). However, as the Sixth Circuit has recognized, "not all injuries suffered by an inmate at the hands of another prisoner result in constitutional liability for prison officials under the Eighth Amendment." *Wilson v. Yaklich*, 148 F.3d 596, 600 (6th Cir. 1998). To establish an Eighth Amendment claim premised on prison officials' failure to protect, a prisoner-plaintiff must establish that the prison officials acted with "deliberate indifference to the health or safety of the inmate." *Id*. at 601 (citing *Farmer*, 511 U.S. at

834). The plaintiff must also "allege that he has suffered or is threatened with suffering actual harm as a result of the defendants' acts or omissions." *Id.*

The Supreme Court clarified the test for deliberate indifference in *Farmer*. A claim of deliberate indifference consists of both objective and subjective components. *Farmer*, 511 U.S. at 834; *Hudson v. McMillian*, 503 U.S. 1, 8 (1992). The plaintiff arguably alleges facts that satisfy the objective prong: that he was assaulted by a fellow inmate and suffered a serious enough injury that he was transported to the ER and received stitches in his face.

To satisfy the subjective prong of the *Farmer* test, the plaintiff must show that the defendants "kn[ew] of and disregard[ed] an excessive risk to inmate health or safety; the official[s] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [they] must also draw the inference." *Farmer*, 511 U.S. at 837. However, "the failure to alleviate a significant risk that an official should have perceived but did not, while no cause for commendation," cannot be the basis of a deliberate indifference claim. *Id.* at 838. At the same time, a prisoner is not required to show that officials had an actual intent to harm him. *Farmer*, 511 U.S. at 836.

In this case, the plaintiff fails to allege facts

establishing the subjective component. The plaintiff had been out of Unit 4 for two months. In addition, the perceived potential risk of harm to the plaintiff allegedly came from the plaintiff's prior cellmates, whom the plaintiff had reported for smoking crack. The inmate who assaulted the plaintiff was not among the individuals who supposedly posed a known threat. In other words, even if the decision to place the plaintiff back in Unit 4 might have been ill-advised, there is no suggestion that the defendants actually knew or even should have known that the inmate who allegedly assaulted the plaintiff posed a threat to him. The plaintiff therefore fails to state a claim against defendants Erwin or Bambee based on an alleged failure to protect him.

With regard to the plaintiff's classification, and the defendants' disregard of his request for a particular classification and to be placed in a particular unit, the law is clear that a prisoner does not have a constitutional right to placement in any particular prison, *Olim v. Wakinekona*, 461 U.S. 238, 245 (1983), or to a particular security classification. *Montanye v. Haymes*, 427 U.S. 236, 242 (1976). Because the plaintiff does not have a constitutional right to a particular placement or classification, he fails to state a claim based on the defendants' refusal to send him to a particular prison or unit. The plaintiff's claims against former DSNF Warden Jewel

Steele and Deputy Warden Ryan, also based on their failure to ensure the plaintiff's placement in a mental-health unit are subject to dismissal on the same basis.

Insofar as the plaintiff may seek to state a claim against any of the defendants based on deliberate indifference to his serious mental-health needs under *Estelle v. Gamble*, 429 U.S. 97 (1976), he fails to do so. He does not allege that he does not receive appropriate treatment for his mental health needs; he simply believes he would do better being placed in a mental-health unit.

The plaintiff's claim against Mr. Lanier is likewise based on Mr. Lanier's failure to reclassify him after "that entire officer Powell situation." (ECF No. 1, at 8.) In that regard, the plaintiff states only that Lanier was aware of his mental health status, knew that the inmates on Unit 4 disliked the plaintiff, and should have reclassified him. Again, there are no allegations that Lanier had any reason to know that the plaintiff would be assaulted by the particular inmate he fought with after being returned to Unit 4, and the plaintiff had no constitutional right to a particular classification or placement. Further, generally speaking, the allegations against Lanier are simply too vague and conclusory to state a claim against him under § 1983.

With respect to Mr. Ganaway, the plaintiff alleges in a

wholly conclusory fashion that this defendant conspired with the others to put the plaintiff's life in danger by placing him back in Unit 4. There is no indication as to how or why Mr. Ganaway, the Unit 7 confinement counselor, had any input in the decision to send the plaintiff back to Unit 4. The Magistrate Judge finds that the plaintiff's factual allegations do not state a plausible claim for relief against Mr. Ganaway.

The plaintiff's claim against CCA Maxwell is based on the plaintiff's allegations that he had told Maxwell about other inmates' "stalking" him and "trying to suggest homosexual stuff" to him, and about his cellmates' smoking crack, but Maxwell allegedly disregarded the plaintiff's complaints. Maxwell also told the plaintiff he would be moved to Unit 7, but then failed to make this happen because the plaintiff refused to have a "low down" relationship with him. (ECF No. 8, at 3.)

Again, the plaintiff has no constitutionally protected interest in placement in any particular prison or unit. He does not allege that he was actually the victim of a homosexual assault or even inappropriate touching. Again, the Magistrate Judge finds that the plaintiff's allegations fail to state a colorable claim against defendant Maxwell.

The plaintiff alleges that Officers McCoy and Perez witnessed the assault(s) on the plaintiff by another prisoner after he was released from confinement and placed back in Unit

4, and that they did not call a "code" or otherwise intervene to protect the plaintiff. (ECF No. 8, at 3.) The plaintiff alleges that the fight continued for a substantial period of time without either officer's taking any action. As set forth above, the plaintiff does have a right under the Eighth Amendment to be protected from assaults by other inmates, and his allegations are sufficient to indicate that these defendants, by allegedly witnessing the assault but failing to take any action to stop it, were deliberately indifferent to the plaintiff's safety and welfare. The Magistrate Judge finds that the complaint states a colorable claim under the Eighth Amendment against defendants McCoy and Perez.

The plaintiff also claims that the prison medical staff, specifically Dr. Barneard, finally decided to send the plaintiff to the ER after the assault, where the plaintiff received stitches on his face. Thereafter, however, according to the plaintiff, Dr. Barneard refused to provide any follow-up care, including pain medication or ice for the swelling, and thus acted with deliberate indifference to the plaintiff's serious medical needs. The Magistrate Judge finds that it is a close call as to whether the plaintiff's allegations establish that his medical need was sufficiently serious to implicate the Eighth Amendment, but at this stage in the proceedings concludes that the plaintiff states a colorable claim against Dr. Barneard

under § 1983.

The only allegations in the amended complaint concerning Corporal Campbell and Corporal Davis are that these officers are "over the grievance board," and both of them allegedly violated the plaintiff's Fourteenth Amendment due-process rights by marking the plaintiff's grievances as "inappropriate" and sending them back to him and by doing nothing about his complaints. These allegations do not state a claim for relief, because there is no constitutionally protected due-process right to an effective prison grievance procedure. *See Grinter v. Knight*, 532 F.3d 567, 576 (6th Cir. 2008) ("The 'denial of administrative grievances or the failure to act' by prison officials does not subject supervisors to liability under § 1983." (quoting *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999)); *Young v. Gundy*, 30 F. App'x 568, 569-70 (6th Cir. 2002) (grievance appeal does not implicate the First Amendment right to access courts because there is no constitutional right to an effective prison grievance procedure); *Lyle v. Stahl*, 156 F.3d 1230 (Table), 1998 WL 476189, at *1 (6th Cir. Aug. 3, 1993) (finding the district court had properly dismissed the plaintiff's complaint based on a prison official's improper rejection of a prison grievance as frivolous, because "there is no inherent constitutional right to an effective prison grievance procedure"). The Magistrate Judge finds that the

complaint fails to state a colorable claim under § 1983 against defendants Campbell and Davis based on their allegedly improper refusal to process the plaintiff's grievances.

The plaintiff claims that Corporal Shaver is the officer who told him he was being sent to confinement after a fight, but it is not clear to which fight the plaintiff is referring. (ECF No. 8, at 7.) The plaintiff also contends that Corporal Shaver "is the one who sent [him] to [segregation] and left [him] there for 2 months." (ECF No. 8, at 8.) Again, a two-month stay in protective custody does not implicate the plaintiff's due-process rights under the Fourteenth Amendment, or his right to be free from cruel and unusual punishment under the Eighth Amendment, absent allegations that he was also deprived of such basic necessities as food, shelter, and clothing. The allegations in the complaint fail to state a colorable claim against Corporal Shaver.

## IV. Conclusion and Recommendation

For the reasons set forth herein, the Magistrate Judge finds that the plaintiff states colorable claims against defendants McCoy, Perez, and Barneard in their individual capacity. A separate order will enter, directing service of process upon these defendants.

The Magistrate Judge further **FINDS**, however, that the allegations in the complaint fail to state a colorable claim

against defendants McCoy, Perez, and Barneard in their official capacity, and therefore **RECOMMENDS** that the official-capacity claims against those defendants be dismissed. The Magistrate Judge further **FINDS** that the complaint fails to state any claim against defendants DSNF, Bob Erwin, Dr. Bambee, Dr. O'Toul, Mr. Lanier, Mr. Ganaway, former DSNF Warden Jewel Steele, Deputy Warden Ryan, Corporal Campbell, C.C.O. Maxwell, Corporal Davis, and Corporal Shaver, and therefore **RECOMMENDS** that the complaint be dismissed as to these defendants.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of the Report and Recommendation upon the party and must state with particularity the specific portions of this Report and Recommendation to which objection is made. Failure to file written objections within the specified time can be deemed a waiver of the right to appeal the district court's order regarding the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140, 147–50 (1985) (affirming the appellate court's holding that failure to file an objection to the magistrate judge's report constitutes a waiver); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004).

/S/ Joe B. Brown
JOE B. BROWN
United States Magistrate Judge

- 23 -